[Cite as *State v. Schwarzman*, 2014-Ohio-2393.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100337**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MARK SCHWARZMAN

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-567998

**BEFORE:** Stewart, J., Celebrezze, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 5, 2014

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, OH    44116


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Brian R. Radigan
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 9th Floor
Cleveland, OH    44113

MELODY J. STEWART, J.:

{¶1} A jury found defendant-appellant Mark Schwarzman guilty of three counts of rape, one count of attempted rape, and four counts of kidnapping. The victim of the offenses, Schwarzman's stepdaughter, claimed that Schwarzman repeatedly raped her over an eight-year period commencing in 1999 when she was just eight years old. In this appeal, Schwarzman raises eight assignments of error that collectively challenge the sufficiency and weight of the evidence; the indictment's failure to specify the dates on which the alleged crimes occurred; the court's failure to grant a continuance of trial so that trial counsel could complete an investigation; errors regarding the admission of trial testimony; and the imposition of consecutive sentences.

I

{¶2} The first assignment of error addresses the court's refusal to grant a trial continuance. The court scheduled trial for June 24, 2013. On June 18, 2013, Schwarzman filed a motion for a continuance because, as relevant to this appeal, he claimed that an investigator he hired was conducting additional interviews of prospective defense witnesses. When the parties convened for trial, defense counsel told the court that the investigator wished to question family members who resided with Schwarzman and the victim during the time of the alleged sexual abuse. The court denied the motion on grounds that trial had been pending for more than two months and that Schwarzman could subpoena those persons to testify if he wished.

**{¶3}** There is a basic due process right that "defense counsel be afforded the reasonable opportunity to prepare his case." *State v. Sowders*, 4 Ohio St.3d 143, 144, 447 N.E.2d 118 (1983). Nevertheless, the court retains control over the disposition of its trial docket such that it is within the sound discretion of the court whether to grant a motion for a continuance. *State v. Bayless*, 48 Ohio St.2d 73, 101, 357 N.E.2d 1035 (1976), *vacated in part on other grounds*, 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155 (1978). The court's refusal to grant a continuance will constitute an abuse of discretion only if the defendant has shown that he was prejudiced. *State v. Kehn*, 50 Ohio St.2d 11, 15, 361 N.E.2d 1330 (1977).

**{¶4}** On the facts presented, we find no abuse of discretion. The court noted that trial had been set for more than two months and that the parties had a "final" pretrial on May 8, 2013, yet Schwarzman waited until just less than one week before trial to file his motion. The motion itself was bare bones and stated that "the Defendant has hired an investigator and is conducting additional interviews of prospective witnesses regarding the above-captioned matter" and that he was awaiting the production of records he subpoenaed from the alleged victim's school and the department of children and family services. The transcript shows that defense counsel offered no justification for the delay in speaking to family members other than to say that it was Schwarzman, not defense counsel, who retained the investigator. Even so, the investigator said that she became involved with the case on May 19, 2013, so she had a full month in which to question the family members. Those family members were all known to Schwarzman and

presumably could easily have been located, so there was no apparent reason for the delay. As the court noted, the investigator was not looking for "forensics," but only to interview persons, all of whom could be subpoenaed to testify at trial. On this basis, we find no prejudice from the court's refusal to continue trial.

II

{¶5} The second assignment of error challenges the specificity of the indictment. The indictment provided two ranges of dates on which the alleged acts of sexual abuse occurred: January 1, 1999 to December 31, 1999 and January 1, 2001 to December 31, 2001 (there were other dates listed in the indictment, but Schwarzman was found not guilty of those offenses). Schwarzman complains that the open-ended dates on a "series of virtually identical counts" did not contain sufficient distinguishing detail to afford him an opportunity to prepare a meaningful defense, thus allowing him to be prosecuted for a course of conduct rather than separate offenses.

{¶6} Schwarzman did not raise any objections to the form of the indictment prior to trial as required by Crim.R. 12(C), so he has waived all but plain error. *See State v. Yaacov*, 8th Dist. Cuyahoga No. 86674, 2006-Ohio-5321, ¶ 13. To prove plain error, Schwarzman must show not only the existence of an error that is obvious on the record, but that the error was such that but for it, the outcome of trial would have been different. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus.

{¶7} The sufficiency of an indictment is measured by two criteria under the Due Process Clause: first, it must sufficiently apprise a defendant of the criminal conduct for

which he is called to answer; second, the indictment and instructions together must provide adequate specificity so as to allow the defendant to plead acquittal or conviction as a defense against future indictment and punishment for the same offense. *Russell v. United States*, 369 U.S. 749, 763-764, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). Under Crim.R. 7(B), an indictment is sufficient if it "contains a statement that the defendant has committed a public offense" and the statement may be in the words of the applicable section of the statute, "provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." *See also Hamling v. United States*, 418 U.S. 87, 117-118, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

{¶8} Schwarzman makes no argument that the indictment failed to contain a statement, couched in the words of the applicable statutes, sufficient to apprise him of the elements of the offenses with which he was charged. Instead, he argues that the indictments did not contain sufficient distinguishing detail with respect to when those offenses occurred. He claims that the indictment charged acts occurring within the time span of one year, and barring a more limited time frame in which his acts allegedly occurred, he was unable to provide evidence in the form of employment records that may have provided an alibi.

{¶9} An indictment charging sexual offenses against children "need not state with specificity the dates of alleged abuse, so long as the prosecution establishes that the offense was committed within the time frame alleged." *Yaacov*, *supra*, at ¶ 17. *See also*

*State v. Triplett*, 11th Dist. Ashtabula No. 2013-A-0018, 2013-Ohio-5190, ¶ 44 ("In cases involving the sexual molestation of minor children, the state is not required to provide exact dates because the victims are simply unable to remember such facts, particularly where the repeated offenses take place over an extended period of time"). As we will show in more detail, the victim testified to time frames in which Schwarzman's acts occurred. She did not give specific dates of when the abuse occurred, but the precise dates were not required for purposes of constitutional notice obligations.

{¶10} Schwarzman's citation to the United States Court of Appeals for the Sixth Circuit decision in *Valentine v. Konteh*, 395 F.3d 626 (6th Cir.2005) does not dictate the resolution of this appeal. Valentine was charged with 20 counts of rape and 20 counts of felonious sexual penetration of a child occurring in the ten-month span between March 1995 and January 1996. He complained that the wide date range specified in the indictment prejudiced his ability to offer alibi defenses. The Sixth Circuit acknowledged that "fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements." *Id*. at 632. It thus found that the date range itself was not problematic, but that "the prosecution did not provide the defendant with exact times and places." *Id*. The Sixth Circuit found the lack of any dates particularly problematic because the child victim could only "describe[ ] 'typical' abusive behavior by Valentine and then testified that the 'typical' abuse occurred twenty or fifteen times." *Id*. at 633.

**{¶11}** *Valentine* has no binding effect on Ohio courts. It has been criticized for applying law that does not apply to Ohio grand juries, misapplying and misrepresenting case authority, and being "distinguished in every subsequent Sixth Circuit decision that cites it on this issue." *State v. Billman*, 7th Dist. Monroe Nos. 12 MO 3 and 12 MO 5, 2013-Ohio-5774, ¶ 34. Regardless of those criticisms, *Valentine* is distinguishable because the victim's testimony in this case differentiated the acts of sexual molestation. The victim gave specific testimony as to what Schwarzman's acts were, unlike that victim in *Valentine* who could only testify to a "typical" act that occurred 15 or 20 times. We therefore find that Schwarzman has failed to show that the lack of specificity in the dates listed in the indictment rose to the level of plain error.

### III

**{¶12}** Schwarzman next argues that the state offered insufficient evidence to show that the offenses occurred within the time frame alleged in the indictment. He maintains that the victim could only give approximate statements as to when the rapes occurred; for example, that they occurred when she was "approximately ten," or when she was "approximately in the third grade," and "approximately 2001." He also argues that the state failed to prove when the rape alleged in Count 9 of the indictment occurred.

### A

**{¶13}** The Due Process Clause of the Fourteenth Amendment "protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Jackson*

*v. Virginia*, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), quoting *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The relevant question "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* This is a highly deferential standard of review because "it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. ___, 132 S.Ct. 2, 3, 181 L.Ed.2d 311 (2011).

B

{¶14} The version of R.C. 2907.02(A)(1)(b) in effect at the time Schwarzman committed his crimes stated: "No person shall engage in sexual conduct with another who is not the spouse of the offender when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

{¶15} "Ordinarily, precise times and dates are not essential elements of offenses," *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985), but the date of the offense is an essential element of rape under R.C. 2907.02(A)(1)(b) to prove that the victim was less than 13 years of age at the time of the offense. Unlike rape as defined in R.C. 2907.02(A)(2) that requires the offender to use force or the threat of force, rape under of R.C. 2907.02(A)(1) is not defined by reference to force. Instead, rape under R.C. 2907.02(A)(1) is defined under terms in which the victim is unable to resist or consent to sexual conduct because of intoxication, age, mental, or physical condition. In

terms of the victim's age under R.C. 2907.02(A)(1)(b), the Committee Comment to the section states that the rationale for criminalizing sexual conduct with the prepuberty victim (commonly known as "statutory rape") is that "the physical immaturity of a prepuberty victim is not easily mistaken, and engaging in sexual conduct with such a person indicates vicious behavior on the part of the offender."

{¶16} Although the victim's age is an essential element of rape under R.C. 2907.02(A)(1)(b), the state need not establish precise dates of when the offense occurred, as long as a rational trier of fact could find that the victim was less than 13 years of age at the time of the offense. *State v. Nelson*, 8th Dist. Cuyahoga No. 54905, 1989 Ohio App. LEXIS 147 (Jan. 19, 1989); *State v. Bell*, 12th Dist. Butler No. CA99-07-122, 2001 Ohio App. LEXIS 1915 (Apr. 30, 2001).

C

{¶17} The victim testified that she was born in February 1991. When she was eight or nine years old, she, her mother, and two sisters moved into Schwarzman's house to live with him and his two daughters.

{¶18} In 2001, the victim recalled a time that she accompanied Schwarzman to his third-shift job at a retail store. When they arrived home, the victim's mother was at work and her sister and stepsisters were sleeping. As the victim headed up to her bedroom, Schwarzman pulled her by the arm into his bedroom. He undressed her, put on a condom, had her lay on the bed, and engaged in intercourse with her. When he finished, he fell asleep. The victim said she "stayed still" on the bed, not moving until

Schwarzman awoke.   He saw her sitting on the bed and said, "oh, you want some more."  He then raped her again.   She did not tell her mother for fear of being beaten.

{¶19} The victim recounted another occasion in 2001 when she was in third grade, when Schwarzman told her to come to the basement.   He removed her clothes, put on a condom, and began to engage in intercourse with her.   He was interrupted, however, by the one of the victim's stepsisters.   Schwarzman went over to the stepsister (his daughter) and told her not to say anything about what she saw because "daddy will go to jail."

{¶20} A rational trier of fact could find that the victim's testimony showed that Schwarzman's acts of rape occurred when she was less than 13 years of age.   This testimony was sufficient evidence of the three counts of rape.

D

{¶21} The sole count of attempted rape relates to an incident in which a nude Schwarzman took the victim into the dining room of their house and was undoing the drawstring of her pants when her younger sister entered the room.   After being discovered, Schwarzman ran into the bathroom.   The victim said "[I] pulled my pants up and I tied them in a knot" so that she could tell her sister that Schwarzman was trying to untie her pants because she was unable to do so.

{¶22} Originally charged as rape in Count 9 of the indictment, the count alleged the date of the offense as January 1, 2001 to December 31, 2001.   When asked when this attempted rape occurred, the victim said, "I want to say '04." Likewise, the sister who witnessed the incident testified but was unable to give a year for when it occurred.   When

asked what school grade she was in at the time she witnessed the incident, the sister said "I was maybe third or fourth, between third and fifth grade."

{¶23} The victim's 13th birthday occurred in February 2004, so it was possible that the attempted rape occurred before the victim turned 13 years of age. The sister said that she moved into Schwarzman's house in 2001, when she was in the second grade. Even if the sister was in the fifth grade at the time of the attempted rape (and assuming a typical school year running through at least the month of May), it was possible that the victim was not more than 13 years of age at the time of the offense.

{¶24} When ruling on the legal sufficiency of the evidence, we must view the evidence in a light most favorable to the state. On the evidence presented, a rational trier of fact could find that the testimony of either witness made it possible that the attempted rape occurred before the victim turned 13 years of age, even if outside the dates alleged in the indictment. When a defendant is charged with offenses against children under the age of 13, "[t]he only effect the date and time have on the offense is to show that the victims were under the age of thirteen at the time of the offense." *State v. Hupp*, 3d Dist. Allen No. 1-08-21, 2009-Ohio-1912, ¶ 9. That neither the victim nor her sister could remember the exact date of the offense does not render their testimony unpersuasive — any inconsistency goes to the weight of their testimony.

IV

{¶25} Schwarzman next argues that the jury's verdict is against the manifest weight of the evidence. He maintains that the state's evidence was uncertain and unreliable, that the witnesses were biased against him, and that the evidence was contradicted and even impeached by one of the state's own witnesses.

A

{¶26} The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340, 515 N.E.2d 1009 (9th Dist.1986).

B

{¶27} Schwarzman correctly notes that the state had no physical evidence to prove that he raped the victim. However, the victim gave testimony that was corroborated in significant respects by other witnesses. For example, the victim testified that Schwarzman used condoms when raping her and that the rapes often occurred in the basement laundry area of their house. The victim's mother testified that she was going through a pile of clothes in the basement when she picked up one of Schwarzman's jackets. A jacket pocket contained approximately six used condoms, filled with semen and individually-wrapped in tissues. Thinking he was having an affair, the mother confronted Schwarzman. He told her that she was never home: an allegation that

presumably affected the frequency of their sexual relations. Schwarzman told the mother that he discussed this lack of sexual intimacy with his boss, and that his boss suggested that Schwarzman masturbate but hide it from her by using a condom. A month after her original discovery of used condoms, the mother found more used condoms in another of Schwarzman's jackets.

{¶28} The discovery of the used condoms was significant for two reasons. First, the victim testified that Schwarzman used them when raping her, so the mother's discovery of the used condoms in a part of the house where the rapes often occurred substantially bolstered the victim's story. Second, the jury could find Schwarzman's explanation for the used condoms unconvincing, choosing instead to believe that his attempt to hide them manifested a consciousness of illicit conduct. In fact, Schwarzman's boss testified and denied telling him to masturbate while wearing a condom. The boss did, however, recall that Schwarzman told him about his wife wanting a divorce after discovering the used condoms. The boss's testimony was consistent with that of the mother, who testified that after finding the used condoms, she told Schwarzman that she wanted a divorce.

{¶29} Another example in which the victim's testimony was corroborated came when she testified that on one occasion when Schwarzman had been raping her on the basement couch, her mother and a friend arrived home unexpectedly. Schwarzman stopped, pulled up his pants, and told the victim to go to the washing machine and pretend to fold clothes. When the mother saw the victim, she asked her "what was going on?"

The victim replied that she was laundering clothes for school and then went upstairs. The mother followed a few minutes later and the victim told her that she was upset because a boy had given her a bracelet as a Valentine's Day gift and Schwarzman told her that she had to return it. The mother testified to this incident, saying that when she came home with her friend, the victim ran out of the basement, crying. When asked what was wrong, the victim replied, "Mark." The mother went to the basement and had a conversation with Schwarzman in which she learned about the bracelet and that he ordered the victim to return it, saying that "[t]his is a no boy zone."

{¶30} The victim's testimony about being discovered in the dining room by one of her sisters was corroborated by the sister, who clearly recalled the incident. The sister testified that it was early morning and she noticed that the victim was not in the room they shared. She snuck downstairs and saw Schwarzman and the victim in the corner of the dining room, with the victim standing against the wall. When Schwarzman saw the sister, he ran to the bathroom "really fast pulling up his pants." The victim told her sister that Schwarzman had been trying to help her untie her pants.

{¶31} The victim's siblings also testified that Schwarzman treated the victim as a favorite. He would introduce the victim to his friends as "his number one, this is my girl," but would refer to her sisters as "his wife's children." The victim's mother confirmed Schwarzman's favoritism, noting that he would give the other girls money for their birthdays, but that he would dress the victim "from head to toe," buying all kinds of clothing. He also offered to pay for the victim's education when he did not make the

same offer to his own two children. The jury could have found this testimony showed that, with the victim being the object of Schwarzman's physical desires, his favoritism was a way of grooming her for his advances.

## C

{¶32} Schwarzman challenges the victim's version of events by noting that she remained silent about the abuse for eight years and even chose to remain living with him after her mother moved out of the house.

{¶33} The victim testified that she did not disclose Schwarzman's abuse for two reasons: she was afraid of breaking up the family and thought that he was suicidal and would kill himself if she made the truth about him known. The jury could find that explanation convincing. What is more, even if the evidence did not show that Schwarzman groomed the child for sexual molestation, there was testimony from multiple persons in the household that he treated her as his "number one," showering her with attention and gifts that he did not provide to the other girls in the household. The jury may well have believed that the level of attention that Schwarzman showered on the victim would have excused her, a mere child, from being able to understand why his conduct was wrong.

## D

{¶34} One of the state's witnesses, the victim's stepsister who witnessed the rape in the basement, gave the police a statement about the incident. The stepsister said in the statement that Schwarzman saw her as he had intercourse with the victim. Schwarzman

pulled his pants up and the stepsister left the basement. He later told her not to say anything about what she saw because he "didn't want to go to jail or something like that." The stepsister recanted her police statement on the witness stand, claiming that the victim put the idea of the incident in her head and that, being a "visual person," the stepsister said she "actually started to see these incidents in my head and believe them." She explained that she agreed to make a statement because she thought it would rekindle the close relationship that she and the victim enjoyed before the victim made her allegations against Schwarzman.

{¶35} The best that can be said for the stepsister's testimony is that she made it impossible for the jury to find her credible: she either lied in her sworn police statement or she lied in her trial testimony. Or as the court noted, the stepsister could not be considered reliable. Her testimony helped neither party, so it cannot now be used to challenge the credibility of the state's other witnesses.

E

{¶36} Finally, Schwarzman argues that the victim's inability to give specific times and dates of the rapes meant that the state's evidence was vague.

As we earlier noted, it is not unusual for child sexual molestation victims to be vague on the times and dates of when the abuse occurred. This is particularly so when, as here, the abuse was ongoing for a period of years. The specific instances to which the victim testified were corroborated in large part by other witnesses, so the jury did not lose its way by finding the victim's testimony credible.

{¶37} We likewise reject Schwarzman's assertion that the victim lacked credibility because he was simply never home and available to commit the abuse as alleged. The evidence showed that Schwarzman worked two jobs: the first job from 8 a.m. to 5 p.m.; the second job from 11 p.m to 7 a.m. Even with these hours, the victim's testimony was that Schwarzman would summon her for sex in the early morning hours or in the evening when the victim and her sisters would go to bed. So despite Schwarzman's long work hours, he had the opportunity to rape the victim. In addition, nothing in the evidence suggested that Schwarzman worked seven days a week or that he worked every week.

V

{¶38} The victim's mother testified that she first learned of the victim's accusations against Schwarzman when at a police station, after reading a book (described by the parties as a "diary") that the victim gave her. The state did not question the victim about the diary in her testimony, so Schwarzman objected to its contents as hearsay. The state told the court that it was planning to show the mother "this piece of paper and [ask] her if that is what she read." The court told the state, "[t]hat is all she can say." The mother went on to testify that she first became aware of what happened to the victim after reading the diary. When the state asked, "what was your reaction after reading that document," the court sustained a defense objection and told the state to "move on." Schwarzman argues that the court erred by allowing the state to ask if the mother first learned of the victim's allegations against him after reading the diary, so the diary was

hearsay because it was offered to prove the truth of the victim's allegations against Schwarzman.

{¶39} The diary is a written assertion made out of court. However, it was not presented for the truth of the matter asserted and is, therefore, not hearsay. *See* Evid.R. 801(C). The state did not ask the jury to consider the diary entry as direct or indirect evidence of guilt, but only to show when the mother first learned of the victim's allegations. Indeed, the direct allegations of the diary entry were not presented, so the jury was only aware that there were allegations of something sexual occurring between Schwarzman and the victim. The allegations were thus not presented for the truth of the matter asserted, so the diary entry was not hearsay.

VI

{¶40} The state called the victim's stepsister to testify, and during her testimony asked her about the police statement she gave that detailed two instances in which she witnessed Schwarzman raping the victim. The stepsister admitted that she gave the statement, but claimed that it was false and brought about because she visualized the victim's allegations to the point where she believed that they actually occurred. The state then sought to impeach the stepsister on grounds that it did not anticipate that she would testify and recant her statement. The court allowed impeachment over objection, but prohibited the state from using the statement as substantive evidence and instructed the jury accordingly. Schwarzman complains that the state failed to show that it was surprised as a predicate for impeachment.

**{¶41}** Under Evid.R. 607(A), a party may not impeach its own witness with a prior inconsistent statement without showing surprise and affirmative damage. Surprise is shown when a witness's trial testimony is materially inconsistent with the witness's prior statements, and counsel had no reason to believe that the witness would recant when called to testify. *State v. Holmes*, 30 Ohio St.3d 20, 23, 506 N.E.2d 204 (1987).

**{¶42}** There is no question that the stepsister's trial testimony was materially inconsistent with the statement she gave the police: the statement detailed two instances in which the stepsister claimed to have witnessed Schwarzman having intercourse with the victim, but the stepsister testified that she fabricated what she described in the statement. That recantation constituted material damage to the state's case.

**{¶43}** Schwarzman argues that the state had reason to believe that the stepsister would recant her testimony because the stepsister said that she twice called the detective who took the statement in an attempt to recant it. The stepsister's trial testimony showed, however, that she never spoke with the detective: "he never called me back or answered." It was thus unclear whether the detective even received the stepsister's message. With the absence of facts showing otherwise, the court found no basis for concluding that the state knew that the stepsister would recant her testimony. We cannot conclude that the court abused its discretion by finding surprise and allowing the state to impeach the stepsister under Evid.R. 607(A).

VII

{¶44} Schwarzman called his next-door neighbor as a witness for the defense. The neighbor testified she moved into her house in 2010 and that up until 2012 when the victim moved out of Schwarzman's house, the victim came to her house "quite often" to see her son. When asked for her "personal observations" of the victim, the neighbor said, "I really did not care for her." When the neighbor began to explain those observations, the state objected. Defense counsel explained that he wanted to impeach testimony by the victim who testified that she did not know the neighbor's son at all. The court sustained the objection on grounds that it was a "tangent" as to why the neighbor did not like the victim. In a proffer, the neighbor testified that she disliked the victim because she appeared to be sending her son mixed messages: despite having a steady boyfriend, she thought the victim would become extremely flirtatious with her son when the victim's boyfriend was away at college.

{¶45} The court did not abuse its discretion by sustaining the objection because the proffered testimony was irrelevant to any fact of consequence at trial. *See* Evid.R. 401. The court could rationally find, consistent with the state's argument below, that Schwarzman appeared to offer the testimony solely to paint the victim as a woman of poor character. That line of testimony would not only have been irrelevant, but remote in time because the victim's acts in 2012 had no relevancy to rapes that occurred in 2001.

{¶46} To the extent that Schwarzman believed the question was proper as a means of impeaching the victim, the court did not abuse its discretion in disallowing it because the victim did not deny knowing the neighbor's son — she testified that the neighbor had

five sons, but she could only remember the names of two of those sons. This contradicted defense counsel's assertion that "she said she didn't even know him." On that basis, we find no abuse of discretion.

VIII

{¶47} At sentencing, the court merged the four kidnapping counts into their corresponding rape or attempted rape counts. The court imposed eight-year sentences on each of the three rape counts and the single attempted rape count. It ordered Schwarzman to serve Counts 3 and 5 concurrently and further ordered him to serve Counts 7 and 11 concurrently, but ordered Counts 7 and 11 to be served consecutive to Counts 3 and 5. This resulted in a total prison term of 16 years. Schwarzman's assignment of error complains that his sentence is contrary to law because it is disproportionate to his conduct and contrary to the principles and purposes of felony sentencing, but he does not independently argue those points. Instead, he maintains that the record does not support the court's findings for imposing consecutive sentences. He also argues that a minimum sentence would have achieved the objectives of punishing him without imposing an unnecessary burden on state or local resources.

{¶48} R.C. 2953.08 circumscribes appellate review of criminal sentences. Apart from limiting the type of errors that a defendant can claim on appeal, R.C. 2953.08 places tight restrictions on how an appellate court may review claimed sentencing errors. As always, a court of appeals may correct errors of law. *See* R.C. 2953.08(A)(4). The court's failure to make findings required by statute before imposing a sentence would

render the sentence contrary to law. *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 12 (8th Dist.), citing *State v. Jones*, 93 Ohio St.3d 391, 399, 2001-Ohio-1341, 754 N.E.2d 1252.

**{¶49}** Schwarzman concedes that the court made the required findings necessary to impose consecutive sentences, but argues that those findings were not supported by the record. R.C. 2953.08(G)(2) states that an appellate court "may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing" if it "clearly and convincingly finds" that "the record does not support the court's findings" made when ordering a defendant to serve consecutive sentences under R.C. 2929.14(C)(4).

**{¶50}** Schwarzman does not say which of the three findings the court made pursuant to R.C. 2929.14(C)(4) are unsupported by the record — his brief states only that "[a]lthough the court made the statutory findings for imposing consecutive sentences and offered some reasons in support, this court should find, clearly and convincingly, that the record does not support the sentencing court's findings. (Transcript generally, PSI)." Appellant's Brief at 35. This is a conclusion, not an argument as required by App.R. 16(A)(7). Schwarzman does argue that numerous witnesses testified to his "good character" as a family man, but that argument goes nowhere in light of the jury's verdict finding that he raped his ten-year-old stepdaughter on multiple occasions.

**{¶51}** For similar reasons, we reject Schwarzman's argument that the length of his sentence placed an unnecessary burden on state and local resources in violation of R.C.

2929.11(A). At the outset, we note that it is unclear whether a defendant has standing to argue that a sentence imposes an unnecessary burden on state or local resources. Apart from the obviously self-serving nature of the argument, *see State v. Carlisle*, 8th Dist. Cuyahoga No. 93266, 2010-Ohio-3407, ¶ 32, it would be the state or local officials who actually allocate funds to house prisoners who would be in the best position to argue that a sentence imposes an unnecessary burden on their resources. The state has made no objection that Schwarzman's sentence placed an unnecessary burden on its resources.

{¶52} In any event, although the court did not specifically mention division (A) of R.C. 2929.11 when imposing sentence, it did state that it considered all required factors of the law and it determined that a prison sentence was "consistent with the purpose of R.C. 2929.11." By stating that it had considered all required factors of the law, including a specific mention of R.C. 2929.11, the court fulfilled its obligations. *See State v. Kamleh*, 8th Dist. Cuyahoga No. 97092, 2012-Ohio-2061, ¶ 61.

{¶53} Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
SEAN C. GALLAGHER, J., CONCUR
100337
KEY WORDS AND SUMMARY

Rape; indictment; evidence; consecutive sentences; hearsay; relevancy. Sufficient evidence existed to find defendant guilty of multiple counts of rape that were charged as having occurred during a one-year time frame because indictments charging the rape of a child under the age of 13 need not contain specific dates as long as the evidence shows that the rapes occurred before the child turned 13 years of age.   The victim in this case gave testimony showing that the rapes occurred before she turned 13 years of age, so there was sufficient evidence presented.