[Cite as *State v. Powell*, 2020-Ohio-3887.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 107276 |
| v. | : | |
| CARLIN POWELL, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** APPLICATION DENIED
**RELEASED AND JOURNALIZED:** July 29, 2020

Cuyahoga County Court of Common Pleas
Case No. CR-15-598275-A
Application for Reopening
Motion No. 535362

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and, Mary M. Frey, Assistant Prosecuting Attorney, *for appellee.*

Carlin Powell, *pro se.*

EILEEN T. GALLAGHER, A.J.:

{¶ 1} On January 21, 2020, the applicant, Carlin Powell, pursuant to App.R. 26(B) and *State v. Murnahan*, 62 Ohio St.3d 60, 584 N.E.2d 1204 (1992), applied to reopen this court's judgment in *State v. Powell*, 8th Dist. Cuyahoga No.

107276, 2019-Ohio-4345, in which this court affirmed his convictions for rape, kidnapping, and corruption of a minor. Powell now argues that his appellate attorney was ineffective for not arguing the following: (1) the trial court erred in not granting a motion for acquittal because the state's main witnesses committed perjury and tampering with evidence; (2) trial counsel was ineffective for not calling an expert witness to refute the state's insufficient, fraudulent DNA evidence and analysis; (3) trial counsel was ineffective in allowing deficient, fraudulent evidence collected and analyzed by a former Cleveland police investigator who has been accused of falsifying and tampering with evidence; and (4) Powell was denied a fair and speedy trial in violation of the Interstate Agreement on Detainers. The state of Ohio filed its brief in opposition on March 19, 2020. For the following reasons, this court denies the application.

## Procedural and Factual Background

### D.E.'s Rape

{¶ 2} D.E. testified at the January 2018 trial as follows: in January 1997, she was 16 years old and met Powell at a convenient store near her home. After conversing and smoking marijuana together, they exchanged phone numbers and agreed to meet again. Approximately a week later, Powell picked her up in his car. D.E. testified that a white man with curly blond hair was also in the car. Powell drove them to a home in Cleveland. Powell and D.E. went into the home, but the friend stayed in the car. Initially, they smoked marijuana, and two other people were with them. After the other two people went upstairs, Powell grabbed her by the neck

and arms, and pushed her down. Despite D.E.'s protests and struggles, Powell vaginally raped her while threatening and slapping her. Afterwards, Powell and his friend drove D.E. back to her home. There she immediately told her sister that she had been raped, and they went to the hospital, where a rape kit was completed.

{¶ 3} As elicited on cross-examination, D.E. gave a different version to the police in 1997. At that time, she said that she had met Powell at a K-Mart, rather than a convenience store. She omitted smoking marijuana with him. She described the passenger in Powell's car as a black man. She also stated that Powell had raped her in the car. D.E. admitted in her trial testimony that she lied to the police because she did not want her father to know that she had smoked marijuana, because she felt it was her fault, and because she just wanted everything to go away.

{¶ 4} Although in 2007, the police had obtained a hit that Powell's DNA matched the DNA from D.E.'s rape kit, an interview with D.E. was not arranged until April 2015. In a blind administration of a photo array, D.E. identified Powell with 100% certainty as the man who raped her. A cold-case investigator interviewed Powell in a North Carolina prison in August 2015. He said that he did not remember D.E., but in 1997 he was taking a lot of drugs and did not remember much. He also consented to buccal swabs for further DNA testing. This testing confirmed that Powell was the sole contributor for seminal fluid found on D.E.'s underwear.

{¶ 5} The grand jury indicted Powell for the rape and kidnapping of D.E. The jury found him guilty on both counts. The judge merged the two counts and imposed a nine-year sentence.

## A.W.'s Rape

{¶ 6}   A.W. gave the following testimony at the January 2018 trial.  On November 16, 1998, A.W. was a fifteen-year-old girl.  On that date, as she was walking to school, a two-door car driven by a man she knew from the neighborhood pulled up beside her. A dark-skinned man with dreadlocks was in the passenger seat. While she was talking to the driver, the passenger pulled her into the car.  She further testified that she remembers the car heading east and stopping at a large house, but she also believed that she was drugged, because she remembers waking up in the house, in which there were a lot of people, a lot of noise, and a lot of drug activity. When she woke up, the driver, the man she knew, was raping her.  A.W. testified that when she woke up later, she was alone in a room.  She was able to put on her clothes and leave the house.  She then went to a telephone and called her grandparents, who came and drove her to a hospital, where a rape kit was collected. A.W. further testified that Carlin Powell was the man she knew from the neighborhood and who raped her.

{¶ 7}   As elicited on cross-examination, A.W. gave a different version of events to the police at the hospital on November 18, 1998.  She was at a convenient store to get change for a bus ride to school, when a four-door car with four men pulled up beside her.  She said it had a New Orleans license plate, with seat cushions and cigarette burns.  A man did pull her into the car, and she gave a more explicit version of the drive.  When they arrived at the house, the four men stripped her and

took turns raping her. When she was able to leave, she took a bus to Tower City before her grandparents took her to the hospital.

{¶ 8} The police did not contact A.W. again for many years. In April 2014, the Cleveland police received a notification that DNA from A.W.'s rape kit matched Powell's DNA. A cold-case investigator conducted an interview with A.W. in April 2015. In a blind administration of a photo array, A.W. identified Powell with certainty as the man who raped her in November 1998. When the cold-case investigator interviewed Powell in August 2015, he denied raping A.W. He also consented to buccal swabs for further DNA testing. This testing confirmed that Powell was a contributor to the seminal fluid extracted from A.W.'s pubic hair combings, a vaginal swab, and two separate skin swabs.

{¶ 9} The grand jury indicted Powell for one count each of rape, kidnapping, and corruption of a minor against A.W. The jury found him guilty of corruption of a minor, and the judge sentenced him to an 18-month prison term consecutive to the sentence for the crimes against D.E. for a total of ten years and six months.

**Trial Procedure**

{¶ 10} The grand jury issued the indictments in August 2015, while Powell was imprisoned in North Carolina. On November 5, 2015, Powell invoked his right to be tried under the Interstate Agreement on Detainers Act (the "IAD"), R.C. 2963.30. North Carolina sent the required forms on March 9, 2016, and these were

accepted and docketed on March 15, 2016, which the state concedes as the start date for bringing Powell to trial within 180 days under the IAD.

{¶ 11} On June 9, 2016, during a pretrial, trial was set for August 3, 2016, at defendant's request. On July 26, 2016, the trial court granted Powell's request for an independent DNA analysis, allocated $1,500 for that purpose, and consequently continued the trial to September 19, 2016, at defendant's request to allow for the analysis.

{¶ 12} In early September, Powell moved to disqualify his counsel, who then moved to withdraw. Powell also filed a complaint of unprofessional conduct with American Bar Association. In an entry filed September 14, 2016, the trial court granted the motion to withdraw, appointed new counsel, and continued the trial date at defendant's request, because he had new counsel. At the next pretrial, the court set trial for November 7, 2016, at defendant's request.

{¶ 13} At an October 25, 2016 pretrial, the court reset the trial for November 14, 2016, at defendant's request to allow more time for DNA analysis and alibi information to be obtained. At the next pretrial, on November 7, the court again reset trial to January 18, 2017, at defendant's request to gain DNA information from prior counsel.

{¶ 14} On the scheduled day of trial, defense counsel was engaged in trial in another courtroom. Thus, the trial court continued the trial to March 6, 2017, at defendant's request. The court also conducted a hearing on Powell's motion to dismiss for preindictment delay and denied the motion.

{¶ 15} On February 23, Powell's attorney moved to continue trial. The court granted the motion and cancelled the March 6 trial date. The court subsequently set trial for May 10, 2017, at defendant's request, at least in part because Powell wanted a ruling on his federal habeas corpus petition.

{¶ 16} On April 24, 2017, Powell filed another motion to disqualify counsel accompanied with another complaint of unprofessional conduct with the American Bar Association. On May 10, the trial court reset the trial date for June 26, 2017, at the request of the court, because the court was conducting another trial. On June 26, the court continued trial to July 12, 2017, at defendant's request, because defense counsel was in another trial.

{¶ 17} On July 12, 2017, Powell withdrew his waiver of the personal appearance of the alleged victim, who lived out of state, and demanded her personal appearance. After informing Powell that this would mean postponing the trial, Powell agreed to the continuance. The new trial date would be chosen at a July 19 pretrial. At that time, trial was set for October 10, 2017, at the request of the defendant.

{¶ 18} In late September 2017, the court referred Powell to the court psychiatric clinic at his request, for evaluation of defendant to proceed to trial pro se because he had filed motions to do so. The trial judge granted defense counsel's motion to withdraw and then recused herself. On November 14, 2017, the trial court entered an entry in which the Supreme Court of Ohio assigned Judge Joseph Gibson

to try the case because of a conflict with the judges of the Cuyahoga County Common Pleas Court. Powell had filed a complaint of bias and prejudice against the court.

{¶ 19} At a November 17, 2017 pretrial, Powell confirmed that he did not wish to represent himself, and the trial judge assigned a third attorney for Powell. The court then scheduled trial for January 22, 2018, to allow new counsel to review discovery and review the independent DNA analysis.

{¶ 20} At a pretrial in late December, Powell's third attorney stated on the record that he had talked to Powell's previous attorney, who had ordered the independent DNA analysis. That attorney explained that he had talked with the lab for an about an hour and got all of his questions answered. The independent analysis had reviewed the work done by the state and was satisfied with the state's results. (Tr. 64.) At a subsequent pretrial, it became clear that Powell had wanted the DNA retested. However, most of the material for testing had been consumed by the first test and could not be retested. Instead, the $1500 allocated was for checking the analysis done by the state. The "recheck" showed that the testing was satisfactory. (Tr. 75 – 84.)

{¶ 21} Joseph Serowik originally performed the serology on rape kits. In the interim, it was learned that he had erred in analyzing at least one other rape kit, and that error led to a reversal of a rape conviction. Serowik was fired. (Tr. 685.) Although Serowik performed the initial tests, he did not testify at trial. Instead, the state called Tina Stewart, a city of Cleveland employee in its forensics laboratory. She testified as to how the rape kits were handled and tested.

**{¶ 22}** The grand jury also indicted Powell for rape and kidnapping of a third woman. However, she did not appear at trial as anticipated, and the state nolled those two charges.

## Appellate Arguments

**{¶ 23}** Powell's appellate attorney argued the following assignments of error: (1) Tina Stewart's testimony detailing evidence collection by a forensic analyst who has since been fired for misconduct violated Powell's right to confrontation and the rules of evidence which bar such hearsay. (2) Powell's rights to due process and a fundamentally fair trial were compromised by the jury's improper exposure to evidence of a third victim whom the state did not call as a witness. And (3) Powell was deprived of his Sixth Amendment right to effective assistance of counsel by failing to move for the severance of the three victims and by failing to move or renew a motion to dismiss for preindictment delay that more specifically alleged the loss of evidence. In this last argument, appellate counsel highlighted the inconsistencies in A.W.'s account and noted that both victims' accounts stated that there were multiple witnesses to the events; such witnesses could have cast doubt on the victims' credibility.

## Discussion of Law

**{¶ 24}** Powell now argues that his appeal should be reopened pursuant to App.R. 26(B) because his appellate counsel was ineffective for not arguing certain assignments of error. An application for reopening must be granted "if there is a genuine issue as to whether a defendant has received ineffective assistance of

appellate counsel on appeal." App.R. 26(B)(5). The Supreme Court of Ohio has held that the two-pronged analysis in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is the appropriate standard when assessing whether an applicant has raised a "genuine issue" to reopen an appeal per App.R. 26(B). *State v. Myers*, 102 Ohio St.3d 318, 2004-Ohio-3075, 810 N.E.2d 436.

{¶ 25} Pursuant to *Strickland*, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); and *State v. Reed*, 74 Ohio St.3d 534, 1996-Ohio-21, 660 N.E.2d 456.

{¶ 26} In *Strickland*, the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689.

{¶ 27} Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced

advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in *State v. Allen*, 77 Ohio St.3d 172, 1996-Ohio-366, 672 N.E.2d 638.

{¶ 28} Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.

{¶ 29} Moreover, appellate review is strictly limited to the record. The *Warder, Bushnell & Glessner Co. v. Jacobs*, 58 Ohio St. 77, 50 N.E. 97 (1898). Thus, "a reviewing court cannot add matter to the record that was not part of the trial court's proceedings and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the

syllabus. "Nor can the effectiveness of appellate counsel be judged by adding new matter to the record and then arguing that counsel should have raised these new issues revealed by the newly added material." *State v. Moore*, 93 Ohio St.3d 649, 650, 2001-Ohio-1892, 758 N.E.2d 1130. "Clearly, declining to raise claims without record support cannot constitute ineffective assistance of appellate counsel." *State v. Burke*, 97 Ohio St.3d 55, 2002-Ohio-5310, 776 N.E.2d 79, ¶10.

{¶ 30} Powell's first argument is that the inconsistencies between the victims' statements to the police immediately after the rapes and their trial testimony establish that the state relied on perjured evidence to obtain his conviction. Indeed, "A prosecutor's knowing use of perjured testimony is a violation of due process and requires reversal of a criminal conviction if there is 'any reasonable likelihood that the false testimony could have affected the judgment of the jury.' *United States v. Agurs*, 427 U.S. 97, 103, 49 L.E.2d 342, 96 S.Ct. 2392 (1976), citing *Napue v. Illinois*, 360 U.S. 264, 271, 3 L.Ed.2d 1216, 79 S.Ct. 1173 (1959)." *State v. Kimble*, 8th Dist. Cuyahoga No. 54154, 1990 Ohio App. LEXIS 4149 (Sept. 22, 1988). As a variation on this argument, Powell parses the tampering with evidence statute, R.C. 2921.12, to assert that the witnesses and the prosecution tampered with the evidence to secure his conviction. He proposes that the witnesses and the prosecutors made and used records and documents, knowing them to be false to mislead the jury. With so many inconsistencies in the two victims' statements, the state could not escape the conclusion that the victims were lying, but nonetheless the state presented the lies.

{¶ 31} However, it is not the law that inconsistencies between a witness's statements and the witness's sworn testimony necessarily establish perjury. The Supreme Court of Ohio has held that "the fact that a witness changes his story is not sufficient to establish perjury. * * * 'mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony' by the prosecutor." *State v. Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, 45 N.E.3d 208, ¶ 83, quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir.1989). Generally, the falsity of a sworn statement is not shown by proof on an unsworn contradictory statement, because credit must be given to what a witness says under oath rather than what the witness said when not under oath. *Richardson v. State*, 45 Ohio App. 46, 49, 186 N.E. 510 (8th Dist.1933). In *State v. Shedwick*, 8th Dist. Cuyahoga No. 71749, 1997 Ohio App.LEXIS 5227 (Nov. 20, 1997), a witness testified in contradiction to an earlier written statement, and the defendant argued that the state was responsible for any inconsistency by a witness. This court rejected that proposition ruling that "[i]nconsistencies separate from suborned perjury simply goes to the weight of the evidence." *Id.* at 12. Accordingly, appellate counsel was not ineffective for failing to argue that the state suborned perjury to obtain Powell's conviction.

{¶ 32} Powell also argues that the state must have conducted multiple interviews with D.E. but withheld exculpatory evidence by not releasing the interview(s). He notes that the state's investigator endeavored to arrange an interview with D.E. twice before she actually conducted the interview. Powell also

notes that after interviewing D.E. in April, the investigator stated that she interviewed him a "few days later," but that interview took place in August. From these facts he infers there must have been additional interviews with D.E.

{¶ 33} The court has reviewed the testimony of D.E. and the investigator and concludes there is no record evidence that such additional interviews occurred. Appellate counsel in the exercise of professional judgment properly refused to make an argument without a basis in the record.

{¶ 34} Powell's second and third assignments of error concern the reliability of the DNA evidence. He proposes that the DNA evidence was insufficient and inconsistent. It was fraudulent and unreliable because Joseph Serowik worked on the matter. Moreover, the testing done years ago, focusing on 12 Or 15 locations, is insufficient, inadequate, and unreliable when compared to the standards used today, focusing on 23 locations. He further argues that his trial counsel was ineffective for not obtaining new, independent testing of the DNA samples and for not obtaining an expert witness who would reveal the insufficiencies of the state's testing.

{¶ 35} One of Powell's main premises for these arguments is that the testing for his case was done for 12 or 13 locations, whereas the current standard for DNA testing requires 23 locations. Thus, he argues his testing was insufficient. However, this reasoning is not well-founded. The testimony of the state's expert established that the new standard does not invalidate the older results; rather, the new standards just increase the level of reliability. (Tr. 722-723, 763.)

{¶ 36} Powell also finds that the collection of DNA evidence seems inconsistent and incredible. For example, his semen was found on the back of D.E.'s panties, but her DNA was not found. Similarly, the vaginal swabs from D.E. were negative for semen, sperm, and blood. Nevertheless, they revealed male DNA. Powell concludes that such inconsistencies show that the DNA evidence was fraudulent. However, the state's expert testified that such inconsistencies are acceptable and normal in reviewing DNA evidence. For example, semen, sperm, and blood are not the only sources of DNA. (Tr. 744-745, 816.)

{¶ 37} Powell then argues that his trial lawyers were ineffective for failing to obtain independent testing that he always wanted and for failing to obtain an expert to refute the state's experts. However, the record indicates that much of the material was consumed in the initial tests. Thus, retesting was problematic and speculative for purposes of an appellate argument. Moreover, with the funds available, defense counsel had the state's results reviewed and analyzed by an independent expert, who opined that the state's results were satisfactory. Confronted with independent evidence that the DNA results were accurate, trial counsel cannot be considered ineffective for not pursuing another expert witness. In *State v. Nichols*, 66 Ohio St.3d 431, 613 N.E.2d 225 (1993), defense counsel in a rape case was confronted with incriminating DNA evidence and retained a DNA expert from Columbia University. After reviewing the materials with the expert, defense counsel declined to call the expert witness, and relied on cross-examination to discredit the DNA evidence. When the defendant argued that his defense counsel was ineffective for not calling

an expert, the Supreme Court of Ohio rejected the argument noting that DNA evidence is reliable and ruling "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." 66 Ohio St.3d at 436. This court further notes that without an expert report upon which to rely, any argument about what the expert would have said is speculation, and speculation is insufficient upon which to base an appellate argument. *State v. Addison*, 8th Dist. Cuyahoga No. 90642, 2009-Ohio-221, *reopening disallowed*, 2009-Ohio-2704; and *State v. Schwarzman*, 8th Dist. Cuyahoga No. 100337, 2014-Ohio-2393, *reopening* disallowed, 2015-Ohio-516.

{¶ 38} Finally, Powell attacks Joseph Serowik's participation in the initial testing. Powell argues that Serowik's credibility as a forensic scientist and expert witness has been eviscerated by the Cuyahoga Prosecutor's office, the Innocence Project, and the judiciary at both the county and appellate level. Because of his heavy involvement in this case, his report's source, methods and results are not trustworthy. However, appellate counsel made these points as part of a larger hearsay argument. Indeed, the court notes that Powell nearly quotes his appellate counsel's brief verbatim on this point. Pursuant to the Supreme Court's admonition, this court will not second-guess an appellate counsel's professional judgment on strategy and tactics.

{¶ 39} Powell's final argument is that he was denied his right to a fair and speedy trial in violation of the IAD. Article III(a) of the act provides that if a prisoner faces an untried indictment, he shall be brought to trial within 180 days after the

prisoner shall have caused to be delivered to the prosecuting attorney and the appropriate court written notice of the place of his imprisonment and his request for final disposition of the indictment. If the indictment is not brought to trial within that time period, the trial court shall enter an order dismissing the indictment with prejudice. Powell's request for final disposition was docketed with the trial court on March 15, 2016. His trial started on January 22, 2018, clearly more than 180 days after the time began to run. Thus, Powell argues that he was denied his speedy trial under the statute.

{¶ 40} However, Article III(a) further provides that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. In interpreting the IAD, the Supreme Court of the United States held that defense counsel's agreement to a trial date outside of the IAD period bars the defendant from seeking dismissal because the trial did not occur with the 180 days. The Court further noted that defendant is deemed bound by the acts of his lawyer in seeking continuances because scheduling matters are among those matters for which agreement by counsel controls. *New York v. Hill*, 528 U.S. 110, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000). Defense counsel obtaining continuance of pretrials also tolls the period for purposes of the IAD. *State v. Alsip*, 8th Dist. Cuyahoga No. 93105, 2011-Ohio-303.

{¶ 41} In the present case, March 15, 2016, began the running of the time for purposes of the IAD. Eighty-six days elapsed from March 15, 2016, to a pretrial on June 9, 2016, at which time a pretrial was scheduled for June 28, 2016, at

defendant's request. (16 days left in March + 30 days April + 31 days May + 9 days in June = 86.) From June 28, 2016, to May 10, 2017, there are continuous continuances at defendant's request. On May 10, 2017, the trial court reset the trial date to June 26, 2017, at the court's request because the court was engaged in trial. Forty-seven days lapsed between those two days. (21 days left in May + 26 days June = 47.) From June 26, 2017, to January 22, 2018, when the trial commenced there is another set of continuous continuances at defendant's request.

{¶ 42} Assuming arguendo that the continuance at the trial court's request is not a necessary or reasonable continuance for purposes of the IAD, only a total of 133 days lapsed for purposes of the 180-day time limit. This court also notes that Powell personally precipitated many of the continuances by seeking more time for DNA analysis and alibi evidence, by filing professional conduct complaints against two of his attorneys, by demanding the third victim's in person testimony, by seeking to represent himself pro se, and by filing a bias and prejudice complaint against the Cuyahoga County Common Pleas Court. This proposed assignment of error is not well-founded, and appellate counsel in the exercise of professional judgment properly rejected it.

{¶ 43} Accordingly, this court denies the application to reopen.

_____
EILEEN T. GALLAGHER, ADMINISTRATIVE JUDGE

MICHELLE J. SHEEHAN, J., and
RAYMOND C. HEADEN, J., CONCUR